1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| ANNE M. KAY, | Case No.: 19-cv-209-MMA (AHG) |
| Plaintiff, | **ORDER FOLLOWING BENCH TRIAL** |
| v. | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY | |
| Defendant. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Anne M. Kay ("Plaintiff") filed the instant action against Defendant Hartford Life and Accident Insurance Company ("Hartford" or "Defendant") pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). *See* Doc. No. 1 ("Compl.").  Plaintiff alleges two causes of action under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)—colloquially, ERISA sections 502(a)(1)(B) and 502(a)(3). She seeks to recover benefits under a group long-term disability policy issued by Hartford to Plaintiff's prior employer.  Both parties timely filed opening trial briefs, *see* Doc. Nos. 38 and 41, and responsive trial briefs, *see* Doc. Nos. 51 and 52.  The Court conducted a bench trial on March 2, 2021.  *See* Doc. No. 54.  Having considered the

parties' submissions, the administrative record,[1] the arguments made by counsel at the bench trial, and based on the findings of fact and conclusions of law set forth below, the Court **ORDERS** entry of judgment in favor of Hartford.

## I. INTRODUCTION

Plaintiff brings a claim against Hartford under ERISA section 502(a)(1)(B).[2] Section 502(a)(1)(B) states that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 445–46 (2011).

Pursuant to ERISA, a plaintiff is entitled to a bench trial on the administrative record. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc), cert. denied, 528 U.S. 964 (1999). Federal Rule of Civil Procedure 52(a)(1) provides in pertinent part:

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

Fed. R. Civ. P. 52(a)(1).

## II. FINDINGS OF FACT[3]

Plaintiff became a registered nurse in 1993 and subsequently worked as a staff nurse in an operating room for 13 years. *See* AR at 1301. In 2007, she developed severe back pain from spine disease at the L4-L5 level. *See* AR at 1301. As a result, she could

---

[1] All citations to "AR" reference the Administrative Record lodged with the Court on December 3, 2020. *See* Doc. No. 37.

[2] As will be discussed further, *infra*, Plaintiff abandoned her section 502(a)(3) claim at trial.

[3] Any conclusion of law which is deemed a finding of fact is incorporated herein by reference.

1   no longer continue working as an operating room nurse.  *See* AR at 1301.  So she

2   accepted a position with Syneron Corporation ("Syneron") as a "Clinical Specialist-

3   Aesthetics" on a per diem basis.  *See* AR at 760.

4          As the pain continued, Plaintiff received treatment from orthopedic surgeon,

5   Dr. Larry Dodge, including epidural steroid injections, trigger point injections, physical

6   therapy, and pain medications.  *See, e.g.*, AR at 754.  With all treatment failing, in mid-

7   July 2008, Plaintiff underwent a discectomy.  *See* AR at 1302.  Two and one half months

8   after the surgery, Plaintiff was doing well and returned to work.  *See* AR at 1303.

9          According to Plaintiff, Syneron merged with Candela Corporation in 2010.[4]  *See*

10  Doc. No. 41 ("Plaintiff's Trial Brief" or "PTB") at 9.  Thereafter, Plaintiff began working

11  for Candela on an increasing per diem basis.  *See* AR at 760.  On January 1, 2014,

12  Candela hired Plaintiff as a full-time "Clinical Specialist"—a senior aesthetics medical

13  device trainer.  *See* AR at 763.

14  **A.      The Policy and Relevant Terms**

15         Hartford insures Candela employees under an employee benefit plan.  *See id.* at 6.

16  The plan includes a group disability policy ("the Policy").  *See id.*  According to the

17  Policy, Hartford will pay an employee up to sixty percent of their income if they become

18  and remain disabled under the Policy.  *See* AR at 471; AR at 474–75.[5]

19         Pursuant to the Policy, "Disabled" means "You are prevented from performing one

20  or more of the Essential Duties of . . . Your Occupation."  AR at 483.  "Essential Duty

21  means a duty that 1) is substantial, not incidental; 2) is fundamental or inherent to the

22  occupation; and 3) cannot be reasonably omitted or changed."  AR at 483.  "Your

23  Occupation is defined as "Your Occupation as it is recognized in the general workplace.

24  Your Occupation does not mean the specific job You are performing for a specific

25

26  _____

27  [4] For the sake of convenience, the Court refers to the merged Syneron-Candela corporation as
    "Candela."

28  [5] All citations to "AR" reference the Administrative Record lodged with the Court on December 3, 2020.
    *See* Doc. No. 37.

1    employer or at a specific location." AR at 486.

2    **C.    Plaintiff's Medical Treatment**

3          Plaintiff's lower back pain returned in July 2015. *See* AR at 1306. On August 4,

4    2015, Plaintiff sought re-evaluation with Dr. Dodge. At that time, Dr. Dodge recorded

5    that Plaintiff's "[a]ctive voluntary range of motion of the thoracolumbar spine was

6    severely limited." AR at 680. Dr. Dodge also reported that Plaintiff's motor and sensory

7    examinations were normal. *See* AR at 680. And he noted that Plaintiff complained she

8    was under "a lot of stress because of her work and the fact that she . . . does not get along

9    well with her supervisor." AR at 680. As a result of this examination, Dr. Dodge

10   concluded that Plaintiff was temporarily totally disabled through September 15, 2015.

11   *See* AR at 680.

12         Dr. Dodge also recommended that Plaintiff seek pain management treatment. *See*

13   AR at 677–79. On August 25, 2015, Plaintiff saw pain management doctor, Dr. Bradley

14   Chesler. *See* AR at 677. He too recorded that Plaintiff's voluntary range of motion

15   ("ROM") was moderately restricted in all directions. *See* AR at 678. And he reiterated

16   Plaintiff's complaints that she could not tolerate the functions of her job.[6] *See* AR at 677.

17         On September 2, 2015, Plaintiff returned to Dr. Dodge. *See* AR at 1460. At that

18   time, Plaintiff was still complaining of back pain and her ROM was limited. *See* AR at

19   1460. Dr. Dodge recommended that she get an MRI. *See* AR at 1460.

20         Plaintiff underwent an MRI of the lumbar spine on September 21, 2015. *See* AR at

21   671. On September 25, 2015, Plaintiff saw Dr. Dodge for her MRI results. *See* AR at

22   667. According to Dr. Dodge, the MRI disclosed a 1 mm disc bulge at L2-L3 and L3-L4

23   levels. *See* AR at 667, 671. He noted that this was not surgical in nature, but that she

24

25   _____

26   [6] Between August 2015 and July 2016, Plaintiff continued to see Dr. Chesler for pain management. The
     Court will not chronologically document each visit. It is sufficient to acknowledge that each record
27   generally reiterates Plaintiff's complaints and notes a restricted ROM and slow gait. *See, e.g.*, AR at
     663, 660 (stating that Plaintiff "appear[ed] to be in pain in the lower right back and the lower right
28   extremity").

remained "reasonably temporarily totally disabled over the next three months."  AR at 667.  At a follow-up appointment on October 27, 2015, Dr. Dodge re-recorded Plaintiff's MRI results  *See* AR at 664.

On November 4, 2015, Dr. Dodge completed an Attending Physician's Statement ("APS").  *See* AR at 1033.  According to the November 2015 APS, Plaintiff was totally disabled from "08/04/15-09/15/15."[7]  AR at 1034.

**B.    Plaintiff's LTD Claim and Initial Approval**

Due to the return of her back pain, Plaintiff filed an application with Hartford for disability benefits—both short-term disability ("STD") and long-term disability ("LTD"). *See, e.g.*, AR at 1046.  Hartford approved Plaintiff's STD application and began the requisite investigation of her claim for LTD benefits.  *See* AR at 1066.  By letter dated November 19, 2015, Hartford approved Plaintiff's LTD claim effective November 3, 2015.  *See* AR at 115.

**C.    Plaintiff's Medical Treatment After Approval**

In order to remain entitled to LTD benefits, Plaintiff was required to continually qualify as "disabled" under the Policy.  Hartford continued its investigation.

On December 2, 2015 Dr. Dodge completed a second APS.  *See* AR at 1002.  He stated that Plaintiff was disabled from "08/04/15-01/25/15."  AR at 1003.

On January 12, 2016, Plaintiff saw Dr. Dodge.  *See* AR at 655.  At that time, he stated that Plaintiff "clearly suffers from chronic pain syndrome" that "may be related to her annular tear of the disc."  AR at 655.  He also recorded a limited ROM.  *See* AR at 655.

On January 22, 2016, Dr. Dodge completed a third APS, noting that Plaintiff remained totally disabled "08/04/15-05/01/16."  AR at 999.

On April 7, 2016, Dr. Dodge recorded that Plaintiff was looking for a new job

---

[7] The Court notes that these dates are retroactive.  It is unclear if this is a typographical error. Nonetheless, the APS documents Dr. Dodge's medical opinion of her disabled status.

1  "within her physical limitations."  AR at 653.  During that examination, Dr. Dodge also

2  noted that Plaintiff's back pain was most likely caused by a "symptomatic annular tear of

3  the intervertebral disc."  AR at 653.

4       On April 25, 2016, Dr. Dodge completed a third APS, extending Plaintiff's

5  disability from "08/04/15-08/20/16."  AR at 979.

6       On May 6, 2016, Dr. Dodge reported that Plaintiff "continues to be symptomatic as

7  a result of her chronic lumbar degeneration;" specifically, he believed "her symptoms to

8  be emanating from some discogenic endplate changes."  AR at 651.

9       On May 17, 2016, Plaintiff had an x-ray performed and Dr. Dodge recorded that

10  Plaintiff had "developed adjacent level disease above her old fusion."  AR at 649.

11       On May 26, 2016, Plaintiff saw Dr. Maneesh Bawa for a "comprehensive

12  orthopedic spinal consultation."  AR at 647.  He recorded that Plaintiff had a normal gait

13  and "full range of motion of her cervical spine with some pain at the extremes."  AR at

14  647.  He also reported that her x-ray showed degenerative changes at C5-C7.  *See* AR at

15  648.

16       On June 1, 2016, Plaintiff underwent a repeat MRI.  *See* AR at 645.  According to

17  the record, the L2-L3 disc bulge increased to 2 mm.  *See* AR at 645.  The L3-L4 bulge

18  was now "minimal."  AR at 645.

19       On June 15, 2016, Plaintiff went for physical therapy.  *See* AR at 625.  According

20  to the initial assessment, Plaintiff demonstrated "decreased ROM, increased pain with

21  activity."  AR at 627.  She saw a physical therapist again on June 22 and 26, 2016.[8]  *See*

22  AR at 623–24.  According to the notes from the latter session, Plaintiff admitted that "the

23  MRI does not match her symptoms."  AR at 624.

24       On June 22, 2015, Dr. Dodge reviewed her prior x-ray and recorded that it revealed

25

26

27  [8] According to the record, Plaintiff went to physical therapy throughout the relevant period, for example, on July 6, July 19, and August 3, 2016.  *See* AR at 620–22.  These records are consistent with Drs. Dodge's and Chesler's notes in that they record Plaintiff's pain complaints, *see* AR at 621, that she was

28  "feeling stressed," AR at 620, and reporting "high emotional stress," AR at 621.

degeneration at the C6-C7 level.[9]  *See* AR at 643.

Only July 12, 2016, Plaintiff underwent a neurological consultation with Dr. Jonathan Schleimer.  *See* AR at 637.  Dr. Schleimer reported "low back pain with mild radiculopathy symptoms" and "[m]ildchronic right S1 possible overlapping L5 radiculopathy with subtle EMG findings."  AR at 635.

Plaintiff had another MRI on July 28, 2016, which showed "moderate to severe cervical degenerative disc disease and spondylosis . . . with no visible nerve impingement."  AR at 633.

On August 2, 2016, Plaintiff again saw Dr. Dodge.  He noted that she continued to be "distressed over significant back complaints."  AR at 631.  He also stated that she "feels quite strong but she can not travel or perform extended work at this time."  AR at 631.

On October 10, 2016, Plaintiff saw Dr. Kevin Toliver for a discogram.[10] According to Dr. Toliver, Plaintiff had "moderate-to-severe concordant neck pain, C5-C6" and "moderate concordant neck pain at C6-C7."  AR at 1400.

**D.    Hartford's Investigation and LTD Termination**

During the investigation period, Hartford sent Dr. Dodge a letter asking him to clarify what prevented Plaintiff from returning to alternate work.  *See* AR at 956.  In response, Dr. Dodge reiterated his conclusion that she was disabled but did not explain the basis for his conclusion.  AR at 956.  Specifically, in response to Hartford's question of whether Plaintiff could work full time sedentary work (with a definition of 10 pounds

---

[9] This particular medical record does not identify which x-ray Dr. Dodge reviewed.  Presumably, the one conducted by Dr. Bawa, as it is the only x-ray in the record.  That said, Dr. Dodge's notes are inconsistent with Dr. Bawa's in terms of the level at which degeneration was identified.  Nonetheless, the Court finds that Dr. Dodge—in agreement with Dr. Bawa—found degeneration of Plaintiff's spine.
[10] Hartford disputes the reliability of this type of test.  *See* Doc. No. 51 at 11.  The dispute is irrelevant to the Court's analysis.  The Court need not determine whether the discogram effectively supports a diagnosis.  Plaintiff's diagnoses are well-documented, with or without the discogram.  Instead, the issue before the Court is whether the evidence in the record sufficiently connects these diagnoses to actual functional impairment.

of force, occasionally), he responded "No" but did not provide a rationale as requested. AR at 956.

As a result, Hartford sought an independent medical opinion from Dr. Vicki Kalen. *See* DTB at 11. Dr. Kalen called Dr. Dodge three times to discuss Plaintiff's condition. *See* Transcript ("TR") at 32:4–6. Her calls went unanswered. *See id.* After reviewing Plaintiff's file, Dr. Kalen summarized the medical evidence and opined:

> There are no restrictions or limitations that are supported by clinical findings of impairment. The only findings on examination [are] reduced lumbar ROM due to perceived pain. The claimant is neurologically fully intact and has a single stable L5-S1 fusion from 2008.
>
> The MRI reportedly only showing some disc bulges at L2-4 and the X-ray showing some degenerative endplate changes at these levels. There are insignificant findings and do not correlate with the magnitude of the claimant's symptoms or her reduced lumbar ROM due to perceived pain.

AR at 946. Dr. Kalen then sent her conclusion to Dr. Dodge for comments—or the opportunity to refute. *See* TR at 32:4–7. He did not respond. *See id.*

By letter dated July 15, 2016, Hartford notified Plaintiff that she no longer qualified for LTD beyond June 30, 2016, and stated that it was terminating her LTD benefits. *See* AR at 100. According to the termination letter, Hartford noted that the "Essential Duties" of Plaintiff's occupation, as it is recognized generally in the workplace, includes: "providing support to sales, travel to customer locations and moving devices. To perform these duties, you must be able to sit and stand for up to 8 hours, push/pull up to 270 pounds, lift up to 25 pounds and carry up to 20 pounds." AR at 102. Hartford further explained that based on Plaintiff's entire record, including Dr. Kalen's independent review, it believed that Plaintiff was able to perform these duties. *See* AR at 103.

**E.      Plaintiff's LTD Appeal**

On January 18, 2017, Plaintiff appealed Hartford's decision.  *See* AR at 1290. Plaintiff argued that: (1) her occupation is of a higher strength level; and (2) her diagnoses render her unable to meet that strength level.  *See e.g.*, AR at 1320. Accordingly, Hartford initiated an appeal investigation.

As to the former, Hartford contracted Valerie Allen to perform an occupational analysis.  Ms. Allen concluded that Plaintiff's occupation as is a "combination of Training Representative [] and General Duty Nurse."  AR at 15.  Ms. Allen further opined that the occupation's essential duties involve "administering treatment in accordance with nursing techniques and preparing medical equipment" and "developing and conducting individual and group training programs for employees of industrial, commercial or government on use of the equipment and treatment."  AR at 16.  Ms. Allen classified the physical demands of these essential duties as a "range" of "Light to Medium, [with] occasional lifting/carrying, pushing or pulling up [to] 50 pounds."  AR at 16.

As to the latter, Hartford obtained a second independent review of Plaintiff's file. On February 6, 2017, Dr. Kevin Kohan reviewed Plaintiff's entire record.  *See* AR at 419. Dr. Kohan concluded that the records, physical examinations, and imaging studies "showed normal findings that are not compatible with [her] complaints."  AR at 421. Initially, Dr. Kohan reported that Plaintiff:

> can work a job full-time, with [the] following activities:
> Standing – unrestricted
> Walking – unrestricted
> Lifting/carrying/pushing/pulling up to 25 lbs constantly
> Climbing stairs – constantly
> Stooping -constantly
> Kneeling – constantly
> Crouching – constantly
> Crawling – constantly
> Sitting – unrestricted

> Reaching – constantly
> Use lower extremities for foot controls – constantly
> Fine manipulation – constantly
> Simple and firm grasping – constantly

AR at 422.  Hartford then asked Dr. Kohan to explain the "25 lbs" portion of his report—specifically, "to clarify and differentiate what the maximum weight and rate (e.g., frequent, occasional, rare, never) she is capable of lifting/carrying and pushing/pulling."  AR at 412.  Dr. Kohan responded that 25 pounds was not a "restriction" but was what Plaintiff could reasonably tolerate.  AR at 410.  Hartford then asked for further clarification on Plaintiff's maximum tolerance, identifying four physical strength categories: sedentary, light, medium, and heavy.  *See* AR at 403–04.  Dr. Kohan responded: "No restrictions are required; based on age and medical records provided, I can surmise [Plaintiff] is capable of DOL medium duty level, with lifting up to 50 lbs. occasionally."  AR at 401.

As a result, on February 22, 2017, Hartford denied Plaintiff's appeal.  *See* AR at 83.

### III. CONCLUSIONS OF LAW[11]

As an initial matter, at trial, Plaintiff stated her intention to abandon her section 502(a)(3) claim.  *See* TR at 37:22–24; *see also Hunt v. City of L.A.*, 523 F. App'x 493, 495 (9th Cir. 2013) (explaining that the "failure to present [a] claim at trial constitutes an abandonment of th[e] claim").  Even if Plaintiff had not abandoned this claim, she would not be entitled to judgment.  It is well-settled that section 502(a)(3) is merely a safety net to remedy injuries where section 502 does not elsewhere provide an adequate remedy.  *See, e.g.*, *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).  Because Plaintiff asserts that she is entitled to compensatory damages equal to the amount of her unpaid benefits, she

---

[11]  Any finding of fact which is deemed a conclusion of law is incorporated herein by reference.

1    pleads an injury that section 502(a)(1)(B) adequately and clearly remedies.  Thus, she
2    cannot also seek recovery under section 502(a)(3).  *See Varity Corp.*, 516 U.S. at 515
3    ("[W]e should expect that where Congress elsewhere provided adequate relief for a
4    beneficiary's injury, there will likely be no need for further equitable relief, in which case
5    such relief normally would not be 'appropriate.'"); *see also Wise v. Verizon Commc'ns,
6    Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) ("Because removal of the ERISA fiduciary is
7    an available remedy under §§ 1109(a) and 1132(a)(2), [the plaintiff] may not resort to
8    this equitable catchall provision to seek the same relief."); *Filarsky v. Life Ins. Co. of N.
9    Am.*, 391 F. Supp. 3d 928, 946 (N.D. Cal. 2019) (granting the plaintiff's motion for
10   judgment as to his benefits claim but denying the motion as to his § 1132(a)(3) claim
11   where his breach of fiduciary duty theory was grounded in the defendant's refusal to pay
12   benefits); *Josef K. v. Cal. Physicians' Serv.*, No. 18-cv-06385-YGR, 2019 U.S. Dist.
13   LEXIS 92730, at *22 (N.D. Cal. June 3, 2019) ("[Section 1132(a)(3)] has been
14   characterized as a 'catchall' provision, and normally is invoked by a plaintiff where relief
15   is not provided elsewhere in the statute."); *Berman v. Microchip Tech. Inc.*, No. 17-cv-
16   01864-HSG, 2018 U.S. Dist. LEXIS 20280, at *35 (N.D. Cal. Feb. 6, 2018) (dismissing a
17   portion of a claim for injunctive relief under § 1132(a)(3) where the claim was available
18   under § 1132(a)(1)(B)).  Therefore, the Court **DISMISSES** Plaintiff's section 502(a)(3)
19   claim **with prejudice**.
20        Turning to Plaintiff's remaining claim, under section 502(a)(1)(B), Plaintiff argues
21   she has met her burden, *see* PTB at 8, while Hartford contends that Plaintiff has failed to
22   demonstrate she is disabled under the terms of the Policy, *see* Doc. No. 38 ("Defendant's
23   Trial Brief" or "DTB") at 6.
24   **A.   Standard of Review**
25        A claim of denial of benefits in an ERISA action "is to be reviewed under a de
26   novo standard unless the benefit plan gives the administrator or fiduciary discretionary
27   authority to determine eligibility for benefits or to construe the terms of the plan."
28   *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Montour v. Hartford*

1  *Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). The parties agree that the de

2  novo standard of review applies. *See* PTB at 7; DTB at 17. Under a de novo standard,

3  the court "does not give deference to the claim administrator's decision, but rather

4  determines in the first instance if the claimant has adequately established that he or she is

5  disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290,

6  1295–96 (9th Cir. 2010).

7      A district court is generally limited to reviewing the evidence contained in the

8  administrative record. "[T]he district court should exercise its discretion to consider

9  evidence outside of the administrative record only when circumstances clearly establish

10  that additional evidence is necessary to conduct an adequate de novo review of the

11  benefit decision." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d

12  1211, 1217 (9th Cir. 2007) (internal quotation marks and citations omitted).

13  **B.    Plaintiff Fails to Meet Her Burden**

14      The parties agree that Plaintiff bears the burden of proving by a preponderance of

15  the evidence that she is disabled, and thus entitled to LTD benefits, under the terms of the

16  Policy. *See Muniz*, 623 F.3d at 1295–96. Pursuant to the Policy, a person is "disabled" if

17  they are "prevented from performing one or more of the Essential Duties of . . . Your

18  Occupation." AR at 483. "Your Occupation" is not subjective and does not account for

19  Plaintiff's specific duties. AR at 486. Instead, the Policy relies on an objective

20  definition: "as it is recognized in the general workplace." AR at 486. Thus, Plaintiff

21  must prove by a preponderance of the evidence that her medical diagnoses prevent her

22  from performing an essential duty of her occupation as it is recognized in the general

23  workplace after June 30, 2016.

24      **i.    Essential Duties**

25      At trial, the parties agreed on the classification of Plaintiff's occupation in the

26  general workplace: a "combination of Training Representative [] and General Duty

27  Nurse." AR at 15. To that end, Plaintiff conceded that she provided no vocational

28  evidence and instead rested on Hartford's submission. *See* TR at 29:12–14.

1   Ms. Allen's report is the only vocational evidence in the record.  Ms. Allen

2   concluded that the physical demands of Plaintiff's essential duties were a "range" of

3   "Light to Medium, [with] occasional lifting/carrying, pushing or pulling up [to] 50

4   pounds."  AR at 16.

5   The Department of Labor ("DOL") defines "Light" as

6
7   lifting no more than 20 pounds at a time with frequent lifting or carrying of
    objects weighing up to 10 pounds. Even though the weight lifted may be very

8   little, a job is in this category when it requires a good deal of walking or
    standing, or when it involves sitting most of the time with some pushing and

9   pulling of arm or leg controls. To be considered capable of performing a full
    or wide range of light work, you must have the ability to do substantially all

10  of these activities. If someone can do light work, we determine that he or she
    can also do sedentary work, unless there are additional limiting factors such

11  as loss of fine dexterity or inability to sit for long periods of time.

12

13

14  20 CFR § 404.1567(b).  And according to the DOL, "Medium" requires "lifting no more

15  than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25

16  pounds. If someone can do medium work, we determine that he or she can also do

17  sedentary and light work."[12]  20 CFR § 404.1567(b).

18  Therefore, the Court finds that Plaintiff's occupation in the general workplace is a

19  range of light to medium duty, as defined by the DOL, and requires a maximum ability to

20  lift, carry, push, or pull up to 50 pounds, occasionally.[13]  Thus, Plaintiff must demonstrate

21

22  _____

23  [12] These DOL definitions are not part of the Administrative Record.  While Plaintiff's definitions in her
    appeal letter are generally consistent with the DOL, see AR at 1298–99, accurate and reliable definitions

24  from the DOL are necessary to the Court's analysis.  Therefore, the Court can and does take judicial
    notice of them.  See Fed. R. Evid. 201; see also McVey v. McVey, 26 F. Supp. 3d 980, 984 (C.D. Cal.

25  2014) ("Under Rule 201, the court can judicially notice '[o]fficial acts of the legislative, executive, and
    judicial departments of the United States,' and '[f]acts and propositions that are not reasonably subject

26  to dispute and are capable of immediate and accurate determination by resort to sources of reasonably
    indisputable accuracy.'") (quoting Fed. R. Evid. 201).

27  [13] At trial, Plaintiff's counsel stated that she "accepted Hartford's determination that Ms. Kay's
    occupation was a light to medium strength category."  TR at 29:12–14.  She further explained that

28  Plaintiff "essentially adopted" that evidence because "there's no question that Hartford agreed that the

by a preponderance of the evidence that she is unable to perform one of those activities.

## ii.  Impairment of an Essential Duty

Plaintiff argues that her medical records, the APSs, and Dr. Dodge's August 2, 2016 letter establish her inability to perform an essential duty.

The Court credits Plaintiff's pain complaints and her physicians' diagnoses. As detailed above, it is undeniable that during the LTD investigation period, Plaintiff repeatedly sought treatment, complaining of back pain and exhibiting a restricted ROM. And her disc degeneration, disc bulges, and chronic pain syndrome are well-documented in the record. *See, e.g.*, AR at 645, 651. It is further undisputed that Dr. Dodge, via several APSs, medically concluded that: (1) physically, Plaintiff is "not capable at this time of working in a safe fashion," *see* AR at 979, 999, 1003, 1033; and (2) Plaintiff is "temporarily totally disabled from [dates] unable to perform any work activities," *see* AR at 979, 999, 1003, 1034. Dr. Dodge's APSs corroborate Plaintiff's complaints. And the Court accepts his opinion that Plaintiff is incapable of performing the functions of her

---

essential duties of Ms. Kay's occupation as they set forth in the initial decision letter noted frequent standing, walking, sitting, lifting, and carrying up to 50 pounds, pushing and pulling equipment weighing 290 pounds on wheels and travel 80 percent of the time, bending, crouching, crawling, stooping, et cetera." TR at 31:4–10.

This is not accurate. First, Hartford did not agree that the duties laid out in its termination letter controlled. *See* TR at 58:18–21 (Ms. Allen "did not accept that in the general workforce somebody who's a combination of these occupations has to travel 80 percent of the time and push and pull up to 290 pounds"). Second, Hartford's termination letter is at odds with Ms. Allen's report. In the termination letter, Hartford indicated that Plaintiff's essential duties' physical demands require sitting and standing for up to 8 hours, pushing/pulling up to 270 pounds, lifting up to 25 pounds and carrying up to 20 pounds. *See* AR at 102. But Ms. Allen did not include a sitting/standing length requirement. She did not opine on the frequency of travel. Nor did she assess a significantly increased pushing/pulling requirement. Moreover, she increased the maximum carrying/lifting requirement to 50 pounds. *See* AR at 16. Despite asking the Court to adopt the termination letter's components that are absent in Ms. Allen's report—sitting/standing for 8 hours and pushing/pulling 270 pounds—Plaintiff seemingly wishes to ignore the termination letter's reduced carrying/lifting requirement.

It is unclear where the duties in the termination letter came from. Regardless, it is not supported by the expert vocational evidence in the record. And importantly, Plaintiff holds the burden, and she did not provide evidence to support inclusion of a sitting/standing or a distinctly increased pushing/pulling duty, absent relying on the singular statement in Hartford's termination letter. Therefore, based on the record, the Court finds that Plaintiff's occupation's essential duties only include the requirements as assessed by Ms. Allen.

1    specific job.  But while this evidence suggests that Plaintiff is impaired, she does appear

2    to have some functional capacity.  *See* AR at 653 (Dr. Dodge noting that Plaintiff was

3    looking for alternate work "within her physical limitations").

4         The question, then, is to what extent?  What are Plaintiff's restrictions and

5    limitations?  Plaintiff's treating physicians' notes, the APSs, and Dr. Dodge's August 2,

6    2016 letter do not show by a preponderance of the evidence that Plaintiff cannot lift,

7    carry, push, or pull up to 50 pounds.  The physicians' repeated listing of her symptoms

8    and diagnoses do not inherently establish the requisite level of functional impairment

9    under the Policy.  Similarly, the APSs do not explain how Plaintiff's condition limits her.

10   Each section on "Abilities"—which calls for the patient's restrictions and limitations,

11   *e.g.*, on lifting and carrying weight—was left blank.  Absent this information, the medical

12   conclusion that Plaintiff is "disabled" does not translate to a finding of disabled under the

13   Policy.  As noted above, "disabled" is a Policy term and it requires a showing of an

14   inability to perform an essential duty—here, lifting, carrying, pushing, or pulling 50

15   pounds.

16        Turning to Dr. Dodge's August 2, 2016 letter.  Dr. Dodge opined that based on

17   Plaintiff's specific job's "vigorous travel schedule," "prolonged or constant standing,"

18   and "carrying of objects which at times could be quite heavy," it was impossible for

19   Plaintiff to continue in her occupation.  AR at 1416.  The Court accepts this as true.  But

20   in terms of aiding Plaintiff in meeting her burden, the letter is insufficient.  Dr. Dodge

21   based his opinion on Plaintiff's specific job description, which is not the proper test under

22   the Policy.  Moreover, his description of "quite heavy" objects is too vague to have any

23   probative value.  And even if it were not too vague, Dr. Dodge does not state that

24   Plaintiff cannot lift, carry, push, or pull "quite heavy" objects.  Therefore, the letter does

25   not support Plaintiff's claim that she cannot perform an essential duty of her occupation

26   in the general workforce.

27        Plaintiff argues that Hartford did not obtain her restrictions and limitations from

28   Dr. Dodge because it did not request them from her.  *See* PTB at 29–30.  It is true that

1    Plaintiff's attorney requested that all communications to her doctors be directed to her.

2    *See* AR at 17.  And it also appears to be true that this did not happen.  At trial, Plaintiff

3    suggested that because Hartford did not properly communicate with her, Hartford cannot

4    rest its denial on the lack of information from Dr. Dodge.  *See* TR at 34:8–13.  According

5    to *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 873 (9th Cir.

6    2008), such allegedly "improper course of dealing," PTB at 30, would impact the degree

7    of deference to which Hartford is entitled.  But unlike the district court in *Saffon*, the

8    Court is reviewing the matter de novo and is not giving discretion to Hartford's decision.

9         Moreover, even if the Court agreed that Hartford should have requested specific

10   restrictions and limitations from Dr. Dodge through Plaintiff, Plaintiff is without recourse

11   at this juncture.  Plaintiff could have obtained the information and sought to augment the

12   record.  But she did not.  There is no suggestion that Dr. Dodge holds the specific

13   medical opinions that Plaintiff needs to satisfy her burden.  The Court will not read into

14   the record evidence from Dr. Dodge that does not exist.

15        Finally, to the extent Plaintiff argues that Hartford impermissibly discredited

16   Dr. Dodge, the Court is unmoved.  This argument appears to be a veiled assertion of the

17   treating physician rule.  However, it is well-settled that the treating physician rule, which

18   is applicable in Social Security appeal cases, does not apply in ERISA cases.  *See*

19   *Hoffman v. Screen Actors Guild Producers Pension Plan*, 757 F. App'x 602, 613 n.13

20   (9th Cir. 2019) (explaining that "[t]he Supreme Court has clearly held that 'courts have

21   no warrant to require administrators automatically to accord special weight to the

22   opinions of a claimant's physician; nor may courts impose on plan administrators a

23   discrete burden of explanation when they credit reliable evidence that conflicts with a

24   treating physician's evaluation'") (quoting *Black & Decker Disability Plan v. Nord*, 538

25   U.S. 822, 834 (2003)); *see also Incong v. Fort Dearborn Life Ins. Co.*, 570 F. App'x

26   724, 726 (9th Cir. 2014).  Moreover, the weight that Hartford placed on Dr. Dodge's

27   opinions is irrelevant.  The Court reviews this matter de novo and, as explained above, it

28   does not "arbitrarily refuse to credit," but accepts Dr. Dodge's opinions.  *See Black &*

1  *Decker*, 538 U.S. at 834 (2003) (holding that administrators may not "arbitrarily refuse to

2  credit" opinions of treating physicians).

3        The fact remains that the totality of the evidence—Plaintiff's medical records, the

4  APSs, Dr. Dodge's August 2, 2016 letter, and Plaintiff's own complaints—do not specify

5  Plaintiff's restrictions and limitations with sufficient detail to establish by a

6  preponderance of the evidence that Plaintiff is unable to lift, carry, push, or pull up to 50

7  pounds.  Therefore, the Court concludes that Plaintiff has not met her burden of

8  demonstrating that she is unable to perform an essential duty of her occupation in the

9  general workplace after June 30, 2016.

10 **C.    Hartford is Entitled to Judgment**

11       As noted above, Hartford believed that Plaintiff's records fell short of establishing

12 Plaintiff's entitlement to LTD.[14]  *See* DTB at 10.  Having an incomplete record to justify

13 continuing LTD benefits, it was not unreasonable for Hartford to seek an independent

14 medical review of Plaintiff's file.

15       Hartford first obtained an independent medical peer review by Dr. Kalen.

16 Dr. Kalen generally concluded that the magnitude of Plaintiff's pain, symptoms, and

17 restricted ROM was inconsistent with the recorded diagnoses of disc degeneration and

18 bulges.  *See* AR at 946.  Dr. Dodge did not refute Dr. Kalen's conclusion.  *See* DTB at

19 14.

20 _____

21 [14] The Court acknowledges that Hartford did initially approve Plaintiff's LTD claim.  *See Saffon*, 522
   F.3d at 871 ("After all, MetLife had been paying Saffon long-term disability benefits for a year, which
22 suggests that she was already disabled. In order to find her no longer disabled, one would expect the
   MRIs to show an *improvement*, not a lack of degeneration.") (emphasis in original); *Montour*, 588 F.3d
23 at 635.  Hartford paid Plaintiff LTD benefits for some eight months.  But it was actively investigating
   the claim the entire time.  It appears from the record that Plaintiff never met her burden of providing
24 sufficient documentation to substantiate her claim.  As a result, there was no documented disability for
   her to improve from.  As Hartford explained at trial, the initial LTD approval was based on "a very
25 limited amount of information, a very limited amount of medical records," TR at 45:18–19, and merely
   afforded Plaintiff "the benefit of the doubt," AR at 46:4, so as not to provide a cessation in her income
26 while Hartford investigated the claim.  Unlike in *Saffon* and *Montour*, Hartford never determined
   Plaintiff was disabled under the Policy after fully vetting her claim.  Therefore, the Court concludes that
27 the requirement of condition improvement, if any, does not apply here.

28

1    Then during the appeal, Hartford obtained a second independent analysis, from

2    Dr. Kohan.  *See* AR at 419.  Dr. Kohan's analysis was consistent with Dr. Kalen's

3    findings.  Dr. Kohan determined that Plaintiff's "subjective findings included increasing

4    pain symptoms, however physical examination and imaging studies showed normal

5    findings that are not compatible with these complaints."  AR at 8.  It is notable that both

6    Drs. Kalen and Kohan came to these conclusions notwithstanding the disc bulges at the

7    L2-L3 and L3-L4 levels.  *See* AR at 8.

8    Turning to the issue of Plaintiff's restrictions and limitations, the only expert

9    evidence in the record directly on this point is from Dr. Kohan.  Dr. Kohan ultimately

10   opined that based on all of the medial records, imaging, and tests, Plaintiff had a

11   maximum restriction of lifting up to 50 pounds and was otherwise capable of meeting the

12   "medium duty level."[15]  AR at 401.

13   Plaintiff argues that Drs. Kalen and Kohan did not review Plaintiff's entire medical

14   record and that their reports were biased and cursory.  *See e.g.*, PTB at 14 ("Dr. Kalen

15   made erroneous assertions, cherry picked the records, downplayed significant findings,

16   ignored diagnoses, irrationally discounted all pain, and committed other errors in her

17   analysis.").  The Court is not persuaded.  Both reports detail all records within Plaintiff's

18   file at the time of the analyses.  *See* AR at 944–45; AR at 419–21.  The burden has never

19   been on Hartford to obtain records; it was always Plaintiff's responsibility to submit

20   them.  *Cf. Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1138 (C.D. Cal. 2015).

21   Disagreeing with their conclusions is not the same as disputing their methods.

22   Moreover, Hartford's review process was sufficiently independent.  In its letter

23   following Plaintiff's appeal, Hartford explained that Plaintiff's case was transferred to a

24   separate appeal department, which would not discuss the merits of her case with the

25

26   _____

27   [15] The Court rejects any suggestion that Dr. Kohan was led to this answer by Hartford.  A review of the
     correspondence reveals that Hartford was, appropriately, seeking clarification as Dr. Kohan's initial
28   report did not provide the necessary information.  *See* AR at 410, 422.

analysts involved in the initial decision.  *See* AR at 97.  Further, Dr. Kohan was

contracted through a different vendor than Dr. Kalen, *see* TR at 60:1, and his file did not

include Dr. Kalen's report so as not to undermine his impartiality, *see* AR at 87.

Accordingly, there is nothing to suggest that the independent reviews were biased or

incomplete.  *See Nelson v. Standard Ins. Co.*, No. 13cv188-WQH-MDD, 2016 U.S. Dist.

LEXIS 4940, at *50–51 (S.D. Cal. Jan. 13, 2016) ("The Court has taken into

consideration [the insurer's] dual role as claims administrator and insurer. This structural

conflict is offset by [the insurer's] efforts to consult three different medical professionals

and [its] decision to conduct reconsideration review by individuals not involved in the

disability determination."); *cf. Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir.

2012) ("The conflict is less important when the administrator takes active steps to reduce

potential bias and to promote accuracy, such as employing a neutral, independent review

process, or segregating employees who make coverage decisions from those who deal

with the company's finances.") (internal citations and quotation marks omitted).

Turning back to Plaintiff's miscommunication argument.  Hartford's trouble with

the incomplete APSs began long before Plaintiff asked to be involved in the

communication, via her appeal letter.  As the Court has already concluded, having

received incomplete APS forms—the sections which were necessary to determine

Plaintiff's disability—it was reasonable for Hartford to obtain an independent analysis.

Moreover, it appears that on appeal an independent medical review may be required.  *See*

29 C.F.R. § 2560.503-1(h)(3)(iii); *see also* 29 C.F.R. § 2560.503-1(h)(3)(v) (providing

that the health care professional consulting with the administrator on appeal "shall be an

individual who is neither an individual who was consulted in connection with the adverse

benefit determination that is the subject of the appeal, nor the subordinate of any such

individual").  Plaintiff cites no authority instructing the Court that Hartford's

communication failure somehow undermines the two independent reviews.  Moreover,

even if the Court found Hartford's communication failure so egregious that it negates

Dr. Kalen's and Dr. Kohan's reports, Plaintiff still fails to meet her burden for the reasons

discussed above.

Finally, Plaintiff argues that it was inappropriate for Hartford to require objective evidence of disability. But Hartford did not improperly require objective evidence. As the Ninth Circuit explained in *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 877 (9th Cir. 2004),

> The administrator acknowledged that Jordan had been diagnosed as having firbromyalgia and did not dispute that Jordan had the condition, or demand objective evidence that she had it. Rather, the administrator asked for evidence that the fibromyalgia she suffered from disabled her from working at her job. MetLife's letter to her doctors acknowledged their diagnosis of fibromyalgia, and asked "based on her diagnosis . . . *what prevented your patient from performing her occupation*" and also asked "what objective findings *prevented her from performing sedentary work*." If Jordan's physicians believed that the effects of her fibromyalgia disabled her from performing her occupation, those medical experts could have responded to the administrator's request for further information with at least *some* answer explaining why the illness prevented Jordan from performing her work as a secretary. However, Drs. Reddy and O'Connor merely reiterated their conclusory findings of disability. They did not answer the quite reasonable inquiry of the administrator.

*Jordan*, 370 F.3d at 877 (emphasis in original). Similar to *Jordan*, Hartford acknowledged Plaintiff's diagnoses and did not disregard her subjective complaints. Instead, Hartford sought substantiation for the claim that Plaintiff's diagnoses and pain render her disabled, *i.e.*, how, specifically, they prevent her from working. This is because, at that time, no one other than Plaintiff herself had provided information regarding her functional limitations.[16] As the Ninth Circuit further explained in *Jordan*:

> Somebody has to make a judgment as to whether a medical condition prevents
> a person from doing her work, and the governing instrument assigns the

---

[16] On appeal, Plaintiff claimed that Dr. Dodge instructed her to "avoid lifting in excess of 20 pounds." AR at 1316. But this instruction is not documented anywhere in the record.

1
2
3
4
5

> discretion to the claims administrator. With a condition such as fibromyalgia,
> where the applicant's physicians depend entirely on the patient's pain reports
> for their diagnoses, their *ipse dixit* cannot be unchallengeable. That would
> shift the discretion from the administrator, as the plan requires, to the
> physicians chosen by the applicant, who depend for their diagnoses on the
> applicant's reports to them of pain. That the administrator ultimately rejects
> the applicant's physicians' views does not establish that it "ignored" them.

6
7
8
9
10
11
12
13
14
15
16

*Jordan*, 370 F.3d at 878.  Unlike fibromyalgia, Plaintiff's condition can be tested.  And contrary to the facts in *Jordan*, Plaintiff does have objective evidence of her diagnoses. But Plaintiff's limitations are entirely based on her own reports.  And in that sense, *Jordan* is instructive.  Plaintiff's self-reported restrictions cannot be unchallengeable. Therefore, it was not unreasonable or outside the scope of the Policy for Hartford to seek evidence of Plaintiff's restrictions and limitations beyond her own reports.  *See Langlois v. Metro. Life Ins. Co.*, No. 11-cv-03472 RMW, 2012 U.S. Dist. LEXIS 72779, at *37 (N.D. Cal. May 24, 2012) ("Although the Plan does not require a claimant to provide objective evidence of disability, subjective evidence of a disabling condition is inherently less reliable that objective evidence.").

17
18
19
20
21
22
23
24
25
26
27
28

The Court does not come to the same conclusion as Hartford: that Plaintiff is "able to work full time at 40 hours per week" with "no restrictions or limitations."  AR at 103. As Plaintiff noted at trial, "this is not a case in which Dr. Dodge simply reported Ms. Kay's subjective reports of pain and nothing more."  TR at 11–12.  There is objective, conclusive, and undisputed evidence that Plaintiff suffers from degenerative disc disease and chronic pain syndrome.  But these are merely diagnoses.  While the Court credits Plaintiff's complaints and all of the medical records, her evidence does not explain how—and importantly, to what extent—her diagnoses impair her.  On the other hand, Dr. Kohan does opine on this point.  His opinion is the only direct evidence on this issue in the record.  And he determined that Plaintiff is capable of meeting the medium duty level, including lifting, carrying, pushing, and pulling up to 50 pounds, occasionally. Therefore, the Court concludes that Plaintiff has not met her burden of demonstrating that

she is disabled under the terms of the Policy after June 30, 2016.  Consequently, Hartford
is entitled to judgment in its favor as to Plaintiff's section 502(a)(1)(B) claim.

## IV. CONCLUSION

Based on the findings of fact and conclusions of law set forth above, the Court
**ORDERS** entry of judgment in favor of Hartford and **DIRECTS** the Clerk of Court to
enter a separate judgment accordingly.

**IT IS SO ORDERED.**

Dated: April 12, 2021

HON. MICHAEL M. ANELLO
United States District Judge